UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | Case No. 2:08-cr-117 |
| | ) | |
| MICHAEL JACQUES, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION and ORDER Re: Defendant's Motion to Strike or Modify Notice of Intent to Seek the Death Penalty**

After obtaining an indictment against Defendant Michael Jacques for the 2008 kidnapping, rape, and murder of Brooke Bennett, the Government filed a Notice of Intent to Seek the Death Penalty ("Notice"). ECF No. 106. As required by the Federal Death Penalty Act of 1994 ("FDPA"), 18 U.S.C. § 3591, *et seq*., the Notice included allegations of statutory and non-statutory aggravating factors the Government proposed to put before the jury in the penalty phase that would follow a conviction. In response, Jacques moved to strike or modify the Notice. ECF No. 146. Jacques advanced several arguments why the Court should strike the Notice in its entirety because both the FDPA in particular, and the federal death penalty in general, must be declared unconstitutional. In the alternative, he argued that

certain of the statutory and non-statutory aggravating factors identified in the Government's Notice should be struck. Among other factors, Jacques requested that the Court bar the Government from introducing the non-statutory aggravating factor that Jacques engaged in past sexual abuse of four juveniles and two adults, referred to as J1-4 and A1-A2, in the thirty years preceding the killing with which he now finds himself charged.

In an order dated May 4, 2011, the Court declined to declare either the FDPA or the federal death penalty unconstitutional, thus denying the motion to strike on those grounds. ECF No. 279. The Court also denied, without prejudice, the motion to strike the allegations involving J1, which were, in part, contemporaneous with the 2008 murder. Similarly, the Court allowed the admission of evidence of the rape of A2 in the penalty phase, reasoning that the crime had occurred in 1992, involved a similar set of facts to the instant case ("the kidnapping and sexual victimization of a young woman"), and resulted in a kidnapping and rape conviction.[1] The Court did, however, strike certain of the factors highlighted by the Government

---

[1] A1 has died, and the Government no longer seeks to introduce evidence with regard to her.

in its Notice. As to the allegations of past sexual misconduct, the Court struck the allegations concerning J2, J3, and J4, concluding that because the conduct was both unadjudicated and particularly stale (more than twenty years old) in all three cases, the probative value of these allegations was outweighed by their potential for unfair prejudice. *See* 18 U.S.C. § 3593(c). The Government appealed. ECF No. 286.

The Second Circuit affirmed the exclusion of the allegations with respect to J2 and J3. As to the allegations involving J4, the Second Circuit noted that "the district court based its order concerning J4 in part on the assumption that those allegations were unadjudicated. In fact, Jacques pleaded guilty to lewd and lascivious conduct in connection with his conduct with J4." Given this incorrect factual assumption, the Second Circuit vacated and remanded for reconsideration in light of that adjudication, adding, however, that "the district court would still be within its discretion to conclude that the age of these allegations and the ambiguity of the plea as to rape is sufficient to warrant their exclusion under § 3593(c)." Having reconsidered the previous order as set

3

out below, the Court now reaches this same conclusion. Accordingly, the motion to strike the sexual misconduct involving J4 is **granted**.

Briefly, the allegations involving J4 date to "in or about 1987," at which time the Government alleges that Jacques (who was then twenty years old) raped J4 (who was thirteen years old at the time) while she was living in Barre, Vermont. ECF No. 106 at 4. As clarified on appeal, this alleged misconduct resulted in Jacques's guilty plea to lewd and lascivious conduct and a three-year deferred sentence. *United States v. Jacques*, 684 F.3d 324, 327 (2d Cir. 2012). The Notice also alleges—under the same sub-heading ("Jacques's Rape of 13-Year-Old J4")—that Jacques "engaged in sexually inappropriate conduct with other girls living in Barre, Vermont at the time." ECF No. 106 at 4. In support of these allegations, the Government also filed certain contemporaneous documentation under seal with this Court. ECF No. 203, Exhibit 3.[2]

---

[2] This documentation includes notes of an interview with the alleged victim, an affidavit of probable cause submitted by a Barre City Police Officer, an affidavit from Jacques, a Vermont State Police Report, and a Criminal History Report, including an April 1987 deferred sentence disposition on charges of lewd and lascivious conduct. According to Jacques's response to these filings, this case also involves the "loss of important evidence," as Jacques's attorney on the 1987 charges conducted a deposition of J4 during which she denied that there had been any sexual intercourse, but has since lost the case file. ECF No. 221 at 8-9.

Jacques sought the exclusion of his alleged past misconduct, arguing that "whatever the probative value the evidence may carry gives way to the danger of unfair prejudice and an effort simply to portray the defendant as a bad person."  ECF No. 146 at 164.  In arguing that the allegations involving J4 should be excluded, Jacques relied upon the (erroneous) assumption—which the Government did not then challenge[3]—that the allegations were unadjudicated, as well as the remoteness of the allegations from the instant offense.  In the alternative, Jacques asked that the Court require the Government to provide further information about these allegations and conduct a hearing to test the reliability of the evidence the Government would offer in support.  In response, the Government cited the observations of the Second Circuit and Supreme Court that "in order to achieve [ ] 'heightened reliability,' more evidence, not less, should be admitted on the presence or absence of aggravating and mitigating factors" during

---

[3] In its response to Jacques's Motion, the Government noted that only one of the prior instances of sexual misconduct "resulted in a criminal conviction for rape and kidnaping," a reference to A2.  ECF No. 163 at 72; *see also* ECF No. 177 at 9 n.5 (identifying conduct at issue as "serial rapes of immature females, committed at intervals from Jacques's teen years to his adult years, and a conviction for the kidnaping and rape of an 18-year-old female").  At no point prior to appeal did the Government contest or correct this assumption.

5

the penalty phase.  *United States v. Fell I*, 360 F.3d 135, 143 (2d Cir. 2004) (citing *Gregg v. Georgia*, 428 U.S. 153, 203-04 (1976)).  ECF No. 163 at 63.  By the Government's argument, the allegations involving J4 are necessary to paint a full picture of Jacques's criminal history, particularly his history with respect to sexually assaulting young girls.

Pursuant to the FDPA, this Court is authorized to exclude from the penalty phase any evidence bearing on an aggravating or mitigating factor "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."  18 U.S.C. § 3593(c).  The Second Circuit, citing the Government's well-worn adage favoring the admission of additional evidence in the penalty phase, has nonetheless recognized that "it hardly follows from that general observation that relevant evidence is *always* permitted."  *United States v. Pepin*, 514 F.3d 193, 204 (2d Cir. 2008).  Admission of all relevant evidence "would eviscerate the trial court's ability to exclude unduly prejudicial material from the penalty hearing."  *Id*.  Both the desire for more evidence and the FDPA's exclusion of prejudicial information are meant to

6

serve the same purpose: ensuring the heightened reliability of evidence admitted during the penalty phase of a capital case due to the unshakeable finality of the death penalty. *See Lockett v. Ohio*, 438 U.S. 586, 604 (1978) ("[T]h[e] qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed."). To that end, the FDPA's limitation on the admissibility of prejudicial evidence is, by its terms, actually more restrictive than the analogous provision of the Federal Rules of Evidence, "which allows the exclusion of relevant evidence 'if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Fell I*, 360 F.3d at 145 (quoting Fed. R. Evid. 403 (emphasis added)).[4] Contrary to the Government's assertions, the Second Circuit's expressed commitment to favoring more evidence at the penalty phase complements, rather than trumps, the FDPA's textual commitment to the exclusion of prejudicial evidence.

---

[4] On the other hand, the FDPA eliminates considerations of undue delay, waste of time, and needless presentation of cumulative evidence from the court's calculus, which are all present in Fed. R. Evid. 403.

In balancing potential prejudice against the probative value of a past conviction, a number of factors are relevant. As to probative value, past convictions must, like all aggravating factors, be "particularly relevant to the sentencing decision." *Gregg*, 428 U.S. at 192. This means that the aggravating past conviction must have some particular probative force in distinguishing "those who deserve capital punishment from those who do not." *Arave v. Creech*, 507 U.S. 463, 474 (1993). Obviously, the remoteness in time of a past conviction reduces the reliability of the evidence used to prove that conviction; memories fade and evidence disappears. Here, twenty-one years passed between the alleged assault of J4 and the murder of Brooke Bennett. *See United States v. Davis*, No. CR.A. 01-282, 2003 WL 1873088, at *5 (E.D. La. Apr. 10, 2003) (striking two past juvenile adjudications as unduly prejudicial because they were over ten years old and thus too remote in time).[5] *See also United States v. Gilbert*,

---

[5] Jacques notes that, in other criminal law contexts, a court would be barred from considering conduct this old. For example, the general statute of limitations for the prosecution of criminal conduct under federal law is five years, 18 U.S.C. § 3282(a), the Sentencing Guidelines generally do not include convictions that date back more than fifteen years in calculating an offender's criminal history, U.S.S.G. § 4A1.2(e), and the Federal Rules of Evidence impose a presumptive ten-year limitation on the use of felony convictions for impeachment purposes, Fed. R. Evid. 609(b). ECF No. 146 at 165.

120 F. Supp. 2d 147, 153 (D. Mass. 2000) (striking uncharged misconduct that occurred eight years prior to alleged murder because, in light of additional pretrial delays, "any testimony about the incident thirteen years after the fact is not reliable enough to be used at a capital sentencing hearing"). Jacques also claims that certain "important," and potentially exculpatory, evidence has been lost due to the passage of time and the mishandling of case files associated with the 1987 charge. ECF No. 221 at 8-9. Given the loss of the case file belonging to Jacques's earlier attorney, his ability to cross examine any witnesses in the penalty phase would be extremely limited and create a potential for prejudice. *See United States v. Concepcion Sablan*, 555 F. Supp. 2d 1205, 1224-255 (D. Colo. 2007) (excluding past conviction that occurred fifteen years before alleged homicide because, given the remoteness in time, any testimony from the alleged victim would not be "sufficiently reliable and would be unduly prejudicial" as the victim's ability to recall the events "would be extremely suspect").

The remoteness of the allegations as to J4 renders those allegations of particularly limited probative value

9

here, where Jacques was himself only twenty years old at the time of the events in question.  As the Second Circuit pointed out in its decision in the instant case, their remoteness robs the allegations of "their probative value with regard to Jacques's character because he was a youth himself at the time."  *United States v. Jacques*, 684 F.3d 324, 327 (2012).  *See Roper v. Simmons*, 543 U.S. 551, 569 (2005) (recognizing, in decision prohibiting capital punishment for those under eighteen years of age, the differences between juveniles and adults that "demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders," including a lack of maturity and development, susceptibility to negative influences, and the "transitory, less fixed" nature of a youth's character).  Jacques's actions as a twenty year old say little about whether he deserves to live or die as a forty-six year old.

Past allegations of misconduct can, however, be corroborated by contemporaneous criminal convictions.  *See United States v. Caro*, 597 F.3d 608, 623 (4th Cir. 2010) ("Prior convictions are [ ] properly and routinely considered in federal sentencing.").  A conviction carries

with it the assurance that the facts underlying that conviction have already been fully established. Indeed, this Court justified the admission of the 1992 incident involving A2 in part because those allegations, in addition to being five years more recent, resulted in a guilty plea to kidnapping and rape. ECF No. 279 at 64. Here, to the contrary, the resulting conviction was not for rape, but was instead for lewd and lascivious conduct. The Government's Notice, insofar as it alleges that Jacques raped J4, goes much further than the terms of the Vermont lewd and lascivious conduct statute.[6] As a consequence, the conviction provides little reassurance of the facts underlying the alleged rape of J4 that the Government seeks to prove at the penalty phase, as those allegations, if true, would support a much more serious charge than that of which Jacques was actually convicted. A lewd and lascivious conduct conviction does not substantiate an alleged rape. Further still, the Government seeks to admit evidence that Jacques "engaged in sexually inappropriate

---

[6] As in effect at the time of the events in question, 13 V.S.A. § 2602 made it unlawful for "a person" to "wilfully and lewdly commit any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of sixteen years, with the intent of arousing, appealing to, or gratifying the lust, passions or sexual desires of such person or of such child." *In re P.M.*, 156 Vt. 303, 306-07 (1991) (quoting 13 V.S.A. § 2602)).

conduct with other girls living in Barre, Vermont at the time," ECF No. 106 at 4, conduct unrelated to the alleged rape of J4 and entirely uncorroborated by the criminal conviction. Jacques's conviction for lewd and lascivious conduct does little to bolster the probative value of the allegations involving J4.

Given Jacques's age at the time of the offense, the remoteness in time of the offense, and that the lewd and lascivious conduct conviction provides scant support for the rape allegations involving J4, the Court finds that these allegations have little probative force in discerning whether Jacques is particularly deserving of the death penalty.

Against this probative value, this Court must balance the prejudicial impact of the allegations involving J4 under the more prejudice-averse evidentiary rule of the FDPA. 18 U.S.C. § 3593(c). Courts have repeatedly recognized the danger of unfair prejudice that can arise from the use of past allegations of misconduct during the penalty phase of a capital trial. *See*, *e.g.*, *United States v. O'Driscoll*, 250 F. Supp. 2d 432, 435-36 (M.D. Penn. 2002). "Reference to a defendant's criminal record is

always highly prejudicial." *United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971). This is particularly so in the penalty phase, as the jury will have already been convinced of the defendant's guilt beyond a reasonable doubt as to the instant offense, perhaps increasing the likelihood that they will believe that he committed a similar offense in the past. *See State v. McCormick*, 272 Ind. 272, 279-80 (1979). Here, such a prejudicial predisposition is especially troubling in light of the inherent unreliability of any evidence the Government could offer to prove an alleged rape that took place twenty-six years ago. A penalty phase jury might more readily accept such unreliable evidence.

Given this likelihood of unfair prejudice that would result from the admission of the Government's evidence as to the allegations involving J4, as well as the unreliability of such stale testimony and its limited probative value as to Jacques's current character, the allegations involving J4 do not meet the "heightened standard of reliability" that the Supreme Court "has demanded [of] factfinding procedures" in capital cases. *Ford v. Wainwright*, 477 U.S. 399, 411 (1986). Accordingly,

the Court finds that the "probative value [of the allegations regarding J4] is outweighed by the danger of creating unfair prejudice[.]" 18 U.S.C. § 3593(c). The motion to strike the allegations involving J4 from the Government's Notice is hereby **granted**.

Dated at Burlington, Vermont this 13th day of June, 2013.

/s/ William K. Sessions III_____
Honorable William K. Sessions III
United States District Judge